IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **NOVO POINT, LLC AND QUANTEC, LLC**, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. **3:14-CV-1552-L** |
| **ELISA KATZ**, *et al.*, | § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

In their Motion for Temporary Injunction (Doc. 22), filed May 16, 2014, Plaintiffs raise the issue of whether Defendant Christopher Payne's ("Payne") removal of this action by under 28 U.S.C. § 1441(b) is improper and whether federal question jurisdiction exists. For the reasons herein explained, the court *sua sponte* determines, without reaching the parties' contentions regarding jurisdiction and removal, that it lacks subject matter jurisdiction and **remands** the action to the 401st Judicial District Court, Collin County, Texas, from which it was removed.

**I.      Factual and Procedural Background**

Plaintiffs Novo Point, LLC and Quantec, LLC ("Plaintiffs" or "LLCs") originally brought this action on April 22, 2014, against Defendants Elisa Katz ("Katz"); Payne; Sandler Siegel PLLC ("Sandler Siegel"); Domain Holdings Group, Inc. ("Domain Holdings"); Fabulous Pty ("Fabulous"); Name.com, Inc. ("Name.com"); and Does 1-15 ("Doe Defendants") (collectively, "Defendants") in the 401st Judicial District Court, Collin County, Texas, alleging the following state law claims against the defendants indicated: (1) breach of fiduciary duty (Katz and Payne); (2) alleged

violations of the Texas Theft Liability Act (Katz and Payne); (3) conversion (all Defendants); (4) negligence (Katz, Payne, and Doe Defendants); (5) tortious interference (Katz, Payne, Domain Holdings, and Doe Defendants); (6) fraud (Katz, Payne, and Doe Defendants); (7) breach of contract (Katz, Payne, and Domain Holdings); (8) money/property had and received (all Defendants); and (9) conspiracy (Katz, Payne, and Doe Defendants). Plaintiffs also sought: (1) a declaratory judgment that Katz and Payne lack authority to manage or represent the LLCs; (2) an accounting (Katz and Payne); and temporary and permanent injunctive relief to prevent Katz and Payne from transferring, dissipating, or exercising any control over the LLCs' assets.

Less than twenty-four hours after the case was filed in state court and before the state court could rule on the temporary restraining order ("TRO"), Payne removed the case to federal court in the United States District Court for the Eastern District of Texas, Sherman Division, based on diversity of citizenship under 28 U.S.C. §§ 1332 and 1441(b), and federal question jurisdiction under 28 U.S.C. § 1331 before any Defendants in the case were served.[1] On April 28, 2014, Plaintiffs filed an Emergency Application for Temporary Restraining Order and Alternative Request to Transfer Venue to the Northern District of Texas, Dallas Division. The same day, United States Magistrate Judge Don D. Bush ("Magistrate Judge Bush") *sua sponte* transferred the case to the Northern District of Texas, Dallas Division, pursuant to 28 U.S.C. § 1404(a), without ruling on Plaintiffs'

---

[1] In his initial Notice of Removal, Payne indicated that diversity of citizenship existed and that removal was proper under section 1441(b). A few hours after filing his initial Notice of Removal, Payne filed a Supplemental Notice of Removal, which included his prior allegations regarding diversity of citizenship and removal under section 1441(b), as well as an allegation that jurisdiction based on a federal question existed. Because the second Notice of Removal includes the supplemental allegation regarding federal question jurisdiction and the prior allegation regarding diversity of citizenship and removal under section 1441(b), the second Notice of Removal is actually an amended Notice of Removal. As such, the court considers only the amended Notice of Removal (Doc. 3) for purposes of this opinion.

**Memorandum Opinion and Order - Page 2**

request for a TRO or the other issues raised in Plaintiffs' April 28, 2014 motion regarding federal question jurisdiction and removal under section 1441(b).

After the case was transferred to the Northern District of Texas, it was originally assigned to Chief United States District Judge Jorge A. Solis, who denied Plaintiffs' request for a TRO on May 6, 2014. On May 16, 2014, Plaintiffs' renewed their request for a TRO (Doc. 19) and also filed a Motion for Temporary Injunction (Doc. 22). In their Motion for Temporary Injunction and brief in support, Plaintiffs again contend in passing that federal question jurisdiction is lacking, and that removal of the case by Payne under section 1441(b) was improper. Pls.' Mem. in Support of Mot. for Temporary Inj. ¶ 14 (Doc. 23).

On May 23, 2014, Payne filed a Motion to Enforce the Jurisdiction of this Court and to Compel the Immediate Cessation of Vexatious Litigation Brought in Other Jurisdictions [by the LLCs and persons acting on their behalf] to Circumvent the Rulings of this Court (Doc. 25). Payne and Katz filed motions on June 5, 2014, and August 21, 2014 (Docs. 35, 60, and 61), seeking similar relief. In these and other filings, Payne and Katz contend that the LLCs and others acting on their behalf, including Jeffrey Baron ("Baron") and David McNair ("McNair"), have filed multiple lawsuits in the Cooks Islands, Florida, and Australia, seeking declaratory and injunctive relief similar to that sought in this case, to circumvent the court's denial of Plaintiffs' TRO in this case and the court's receivership orders in the *Netsphere* litigation, Civil Action No. 3:09-CV-988-L, assigned to this court.

On June 9, 2014, Payne and Katz moved to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Alternatively, Payne and Katz requested leave to join as a party McNair (Doc. 37). On July 11, 2014, Payne's law firm Sandler Siegel also moved to dismiss

Case 3:14-cv-01552-L Document 71 Filed 03/13/15 Page 4 of 15 PageID 2459

Plaintiffs' claims under Rule 12(b)(6), which this court converted to a summary judgment. On August 13, 2014, Plaintiffs filed a response in opposition to the summary judgment motion and requested a continuance to undertake discovery and make any necessary corporate registration filings with the State of Texas if the court determined that registration was a prerequisite to filing suit.

In reviewing the Notice of Removal, Plaintiffs' Motion for Temporary Injunction and brief in support (Docs. 22 and 23), and the record in this case, including Magistrate Judge Bush's order in which he expressed doubts regarding the propriety of removal and the existence of federal question jurisdiction, the court requested briefing from the parties regarding the propriety of removal under section 1441(b) and the existence of subject matter jurisdiction based on diversity and federal question jurisdiction.

On February 12, 2015, Payne filed his response contending that subject matter jurisdiction exists based on diversity and federal question jurisdiction, and that removal of the case was proper under 28 U.S.C. § 1441(b). In addition, Payne contends that Plaintiffs' prior request to remand the case (Doc. 10) was mooted when Magistrate Judge Bush granted Plaintiffs' alternative request to transfer the case to the Northern District of Texas, and that any defect in removal was waived because Plaintiff did not thereafter reurge their motion to remand. Payne further asserts that Baron, a nonparty in this action, has attempted to improperly influence the court by filing a letter to the court, requesting that the court either set a hearing on the LLCs' request for injunctive relief or remand the case to state court.[2]  In their February 18, 2015 reply brief, Plaintiffs contend that

---

[2] In his letter, Baron requested that the court either set the LLCs' motions for injunctive relief for hearing or remand the case to state court "which we believe this Honorable Court could accomplish *sua sponte*, as it is very clear that this Court does not have jurisdiction over this controversy, any more than it did when it was raised in the *Netsphere* case." Baron's Letter 4 (Doc. 64). In recent filings in other cases pending before this court and a related bankruptcy case filed by Baron on behalf of Ondova Limited Company, Baron suggests that, as a result of his letter to the court in this case, "Judge Lindsay has finally taken note of the plight of the LLCs and has entered an order which seemingly will

diversity of citizenship is lacking, no federal question is raised by their pleadings, and Payne's removal of the case under section 1441(b) was improper.

On February 24, 2015, Payne moved for leave to file a sur-reply, which the court denied because it had not requested additional briefing and previously made clear in its February 5, 2015 order that no additional briefing on these issues would be permitted unless requested by the court.

---

resolve this a[nd] remand back to state court." *In re Ondova Ltd. Co.*, Case No. 09-34784-SGJ (Doc. 1188 at 7). Any credit taken by Baron is woefully misguided, as his correspondence, which the court views as unnecessary meddling, did not influence the court. Plaintiffs' motions for injunctive relief were not previously set for hearing because, as indicated in the court's requirements for motion practice available on the Northern District of Texas' website, the court generally rules on motions based on the parties' briefs and submissions. Moreover, the court did not rush to rule on the motions for injunctive relief because, after carefully reviewing the LLCs' evidence, the court concluded that the evidence does "not clearly establish McNair's authority to manage the LLCs; rather, these documents and evidence raise more questions than they answer and tend to confirm this court's and the bankruptcy court's suspicion that Baron has used and continues to use the Village Trust and the LLCs to manipulate the proceedings in this and other cases assigned to the court and to avoid obligations owed to those with whom Baron, Ondova, or the LLCs have done business." Order 5-6 (Doc. 70).

Baron's letter and Plaintiffs' filings in this case also improperly conflate the jurisdictional issues in this case with those in *Netsphere*. The court has an independent duty to determine whether it has subject matter jurisdiction over a case, even if the issue is not raised by a party. In this case, the court's conclusion that it lacks subject matter jurisdiction turns on its determination that Payne has not met his burden as the removing party of showing that subject matter jurisdiction exists. The court's decision in *Netsphere*, on the other hand, to decline to exercise jurisdiction over the collateral issue as to whom has authority to manage or control the LLCs' assets, that arose after the court announced that it would begin winding down the receivership, was based on: (1) Baron's objection to the court exercising jurisdiction over the dispute and delaying the winding down of the receivership to decide the issue; (2) the court's determination that resolution of the issue was not necessary for the court to wind down the receivership; and (3) the court's determination that conducting such proceedings would unnecessarily prolong the winding down of the receivership. This is not to say, however, that the court lacked jurisdiction based on the information available to it at the time to order the return of the LLCs' receivership assets to Katz and to enforce such orders. Thus, the repeated assertions by Baron, the LLCs, and those acting on their behalf in various court filings, that this court expressly declined to exercise jurisdiction or lacked jurisdiction all together, grossly mischaracterizes the court's orders and the proceedings in *Netsphere*. Moreover, if the court determines that such mischaracterizations or other actions by Baron and those acting on his or the LLCs' behalf were taken to interfere with or undermine the court's orders regarding the winding down of the receivership, including the return of the LLCs' assets to Katz, the court retains jurisdiction to initiate contempt proceedings.

While the court's decision to not exercise jurisdiction over the dispute as to whom has authority to manage or control the LLCs does not preclude the LLCs from bringing suit to resolve the issue of whom has authority to manage or control the LLCs, the court views as problematic the efforts of Baron, the LLCs, and those acting on their behalf in changing the LLCs' manager in a last-minute attempt to manipulate the winding down of the receivership. Also problematic is the temporary injunctive relief sought by the LLCs in this and other cases to prevent Katz from managing the LLCs and their assets *pending resolution of the issue of who has authority to manage the LLCs* because such requests for relief, if granted, appear to directly undercut the court's receivership orders regarding the return of the LLCs' assets to Katz *in the interim*. In addition, such requests for temporary injunctive relief and the threats of litigation directed to those with whom the LLCs do business through Katz have created unnecessary confusion and uncertainty, and have interfered with the winding down of the receivership.

**Memorandum Opinion and Order - Page 5**

Order 2 (Doc. 65). Moreover, none of the proposed additional matters in the motion for leave affects the court's determination that it lacks subject matter jurisdiction.

## II.     Subject Matter Jurisdiction

### A.     The General Standard

A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," or over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331, 1332. Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *See Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking. *Id.*; *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). "[S]ubject-matter jurisdiction cannot be created by waiver or consent." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001).

Federal courts may also exercise subject matter jurisdiction over a civil action removed from a state court. Unless Congress provides otherwise, a "civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case. *Ruhgras AG v. Marathon Oil Co.*,

526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) (A "federal court may raise subject matter jurisdiction *sua sponte*.").

### B. Federal Question

A federal court has subject matter jurisdiction over cases arising under the Constitution, laws, or treaties of the United States, which is commonly referred to as federal question jurisdiction. 28 U.S.C. § 1331. This provision for federal question jurisdiction is generally invoked by a plaintiff pleading a cause of action created by federal law. This, however, is not the only manner in which federal question jurisdiction may arise.

An action that asserts only state law claims may "arise under" federal law if "the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9 (1983) (citations omitted). This means that a federal district court has jurisdiction over a state claim that "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Otherwise stated, as "the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive," a federal court is to decline jurisdiction if the exercise of its jurisdiction is inconsistent "with congressional judgment about the sound division of labor between state and federal courts governing application of [28 U.S.C.] § 1331." *Id.* at 313-14. Under *Grable*, federal question jurisdiction exists only when "(1) resolving a federal issue is necessary to the resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial;

**Memorandum Opinion and Order - Page 7**

and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Singh v. Morris, LLP,* 538 F.3d 334, 338 (5th Cir. 2008). In the final analysis, when a plaintiff's pleadings set forth only state law claims, a federal district court has federal question jurisdiction to entertain the action only if "(1) the state law claims necessarily raise a federal issue or (2) the state law claims are completely preempted by federal law." *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008).

Whether an action "arises under" federal law and creates federal question jurisdiction over a case removed from state to federal court, or one originally filed in such court, ordinarily "must be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (citation omitted). "[A] case may *not* be removed to federal court on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 393 (1987). "A defense that raises a federal question is inadequate to confer federal jurisdiction." *Thompson*, 478 U.S. at 808 (citation omitted). "Even an inevitable federal defense does not provide a basis for removal jurisdiction." *Bernhard*, 523 F.3d at 551 (citations omitted). In other words, the *complaint* must "raise[] issues of federal law sufficient to support federal question jurisdiction." *Rodriguez v. Pacificare of Tex., Inc.*, 980 F.2d 1014, 1017 (5th Cir. 1993) (citation omitted).

A "corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area, that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987); *Arana v. Ochsner Health Plan*, 338 F.3d 433, 437 (5th Cir. 2003) (en banc). In

other words, "[w]hen the federal statute completely pre-empts the state law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality, based on federal law," and such "claim is then removable under 28 U.S.C. § 1441(b)." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).

### C. Diversity

Diversity of citizenship exists between the parties only if each plaintiff has a different citizenship from each defendant. *Getty Oil Corp. v. Insurance Co. of North America*, 841 F.2d 1254, 1258 (5th Cir. 1988). Otherwise stated, 28 U.S.C. § 1332 requires complete diversity of citizenship; that is, a district court cannot exercise jurisdiction if any plaintiff shares the same citizenship as any defendant. *See Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003) (citation omitted). "[T]he basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty*, 841 F.2d at 1259 (citing *Illinois Cent. Gulf R.R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 n.2 (5th Cir. 1983)). Failure to allege adequately the basis of diversity mandates remand or dismissal of the action. *See Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 805 (5th Cir. 1991). A notice of removal "must allege diversity both at the time of the filing of the suit in state court and at the time of removal." *In re Allstate Ins. Co.*, 8 F.3d 219, 221 (5th Cir. 1993) (quotation marks and citations omitted). Such failure, however, is a procedural defect and may be cured by filing an amended notice. *Id.* n.4.

A natural person is considered a citizen of the state where that person is domiciled, that is, where the person has a fixed residence with the intent to remain there indefinitely. *See Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 555-56 (5th Cir. 1985). "'Citizenship' and 'residency'

**Memorandum Opinion and Order - Page 9**

are not synonymous." *Parker v. Overman*, 59 U.S. 137, 141 (1855).  "For diversity purposes, citizenship means domicile; mere residence in [a] [s]tate is not sufficient." *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 799 (5th Cir. 2007) (citation and quotation marks omitted).  "Domicile requires residence in [a] state and an intent to remain in the state."  *Id.* at 798 (citing *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)).  The citizenship of a limited liability company "is determined by the citizenship of all of its members."  *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008).  A corporation is a "citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(1).

Any doubts as to the propriety of the removal should be construed strictly in favor of remand. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).  "The burden of establishing subject matter jurisdiction in federal court rests on the party seeking to invoke it." *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) (footnote omitted). Accordingly, if a case is removed to federal court, the defendant has the burden of establishing subject matter jurisdiction; if a case is initially filed in federal court, the burden rests with the plaintiff to establish that the case "arises under" federal law, or that diversity exists and that the amount in controversy exceeds the jurisdictional threshold.

### III.    Analysis

#### A.    Federal Question

Regarding federal question jurisdiction, Payne alleges in his Notice of Removal that the claims asserted by Plaintiffs involve:

**Memorandum Opinion and Order - Page 10**

...

the interpretation of federal law, the legal effect of federal receivership orders, the powers of federal receivers under federal law, the legal effect of writs issued pursuant to 28 U.S.C. § 1651(a), the authority granted pursuant to 28 U.S.C. § 1654, and the authority of federal judges to enter orders in winding down federal receivership estates.

Notice of Removal 2. In his February 12, 2015 response, Payne further expounds as follows regarding federal question jurisdiction:

19. The right to representation by counsel in federal court is a federal right established by 28 U.S.C. § 1654. A body of federal law setting the bounds of such right has been set out by the federal courts.

20. With respect to termination of representation by counsel in federal suits, the Fifth Circuit has ruled that "an order of the court must be asked if he is to be removed and substituted without his consent." Accordingly, non-consensual removal of federal trial counsel is a question of federal law. For years the undersigned has been federal trial counsel for Novo Point LLC and Quantec LLC in the Netsphere case and related bankruptcy cases.

21. Baron has a long record of using lawyers' services and then not paying for them. He has reportedly done this with literally *dozens* of lawyers. In an ongoing scheme to avoid paying each subsequent counsel, Baron (or a proxy) raises allegations of breach of fiduciary duty, malpractice, theft of assets, etc. Baron's tactics are so abusive that the district court tried to control the situation by imposing a receivership. The Fifth Circuit ruled that the effort to control Baron's abuses was warranted but that the district court had selected an unauthorized remedy.

22. As discussed above, the authorized remedy to control Baron's abusive use of counsel is for the Court to condition removal or substitution of counsel upon the payment of present counsel. By this simple rule of federal law, Baron's tactic of serial non-payment via musical chair substitution of trial counsel is entirely cut-off. To allow a change in lawyers, the federal court is empowered to require Baron (or any party) to first pay their current lawyer.

23. To be clear, as a matter of federal law, no litigant, including Jeff Baron, can simply fire his attorney in a federal case *without the approval of the federal judge*. Federal law does not allow Baron's abusive tactics.

**Memorandum Opinion and Order - Page 11**

> 24. To avoid that, Baron is seeking, (through proxies), to use the state court to obtain an order terminating the undersigned, the LLCs' federal counsel—without first paying for the years of work performed on behalf of Novo Point LLC and Quantec LLC. The plaintiffs' petition in the case at bar seeks an order approving the removal of the undersigned as counsel in the federal *Netsphere* case.
>
> 25. As discussed above, such matters present a federal question because the right of a party to terminate his federal counsel is governed by federal, not state law. Federal law determines the substitution of counsel in federal suits.
>
> 26. Accordingly, an attempt to terminate a federal counsel in an active federal case, (as in the instant suit), raises a question of federal law.

Payne's Resp. ¶¶ 19-26 (citations and footnotes omitted).

Payne overstates the importance in this case of federal law, which is merely tangential or incidental to the resolution of the issues in this case. *See e.g., Doe v. Episcopal Sch. of Dallas, Inc.*, No. 3:11-CV-1058-L, 2011 WL 2601506, at *7 (N.D. Tex. June 30, 2011) (concluding that no federal question was presented because the alleged federal interest was insubstantial and merely incidental to the plaintiffs' claims). Plaintiffs' state law claims do not present a federally-created cause of action or depend on the resolution of a substantial question of federal law. The resolution of whether Payne or Katz is entitled to payment for services performed on behalf of the LLCs and whether Plaintiffs can avoid compensating Payne or Katz for such services can be decided based on state contract law principles. Resolution of Plaintiffs' remaining claims similarly turns on state law, not federal law.

While this court may impose sanctions against Baron or others whose bad faith conduct has interfered with the court's administration of its docket or unnecessarily increased litigation costs in the *Netsphere* litigation or other cases assigned to this court, the resolution of Plaintiffs' state law

claims in this case does not necessarily depend on any such determination by the court. Further, while Defendants may assert compliance with this court's receivership orders in the *Netsphere* litigation as a defense to Plaintiffs' state claims, such a defense, even if anticipated in Plaintiffs' Original Petition, is not a basis for removal to federal court. *Caterpillar*, 482 U.S. at 393. Accordingly, Payne has not met his burden of establishing that federal question jurisdiction exists over this removed action.

### B.     Diversity of Citizenship

The Notice of Removal indicates as follows regarding diversity of citizenship: "There is complete diversity of citizenship between the purported plaintiffs and the defendants and the matter in controversy exceeds one million dollars." Notice of Removal 2. No other information regarding the parties' citizenship is included in the Notice of Removal. In his brief regarding jurisdiction and removal, Payne contends that Plaintiffs' state court pleadings clearly establish that diversity of citizenship exists and that the amount in controversy requirement is satisfied. The court agrees that the amount in controversy requirement is satisfied because Plaintiffs indicate in their Original Petition that they are seeking over $1,000,000 in damages. Plaintiffs' pleadings, however, are insufficient to establish that there is complete diversity of citizenship.

Plaintiffs allege that they are both Cook Islands limited liability companies with their principal place of business in the Cook Islands, but there is no information in Plaintiff's Original Petition, or otherwise, regarding the citizenship of the members of the limited liability companies. Moreover, Plaintiffs do not allege that he, Katz, and Sandler Siegel are citizens of Texas. Plaintiffs instead merely allege that Katz and Payne reside in Texas, and that Sandler Siegel can be served with

process in Dallas, Texas. As previously noted, however, a party's residence is not synonymous with citizenship. For the same reason, a party's address for purposes of service of process is insufficient to establish citizenship. Thus, contrary to Payne's assertion, Plaintiffs' Original Petition does not establish the citizenship of Payne, Katz, Sandler Siegel, or Plaintiffs, and Payne has not met his burden as the removing party of establishing subject matter jurisdiction based on diversity of citizenship, even though the court gave both parties the opportunity to submit additional briefing on the issue.

### C.     Removal by In-State Defendant

Plaintiffs contend that Payne "sought removal on diversity grounds which is improper for an in-state Defendant." Pls.' Mem. in Support of Mot. for Temporary Inj. ¶ 14 (Doc. 23) (citing 28 U.S.C. § 1441(b)). Payne responds that section 1441(b)'s prohibition against removal by an in-state defendant does not apply because he removed the case before any citizen of Texas was served. For support, Payne cites *McCall v. Scott*, 239 F.3d 808, 813 n.2 (6th Cir. 2001), and *Spill Textile Corp. v. Spilltech Environmental*, 223 F. Supp. 2d 790 , 793 (E.D. Tex. 2002), for the proposition that when there is complete diversity of citizenship, an unserved resident defendant does not defeat removal under 28 U.S.C. § 1441(b). Payne therefore maintains that remand is not required under section 1441(b). As previously noted, Payne also contends that Plaintiffs waived any procedural defect in removal by not reurging their motion to remand after Magistrate Judge Bush granted their alternative request to transfer the case. To this, Plaintiffs reply that "Defendants' argument that only served in-state defendants are precluded form removing is untenable. If so, every in-state defendant

could get around the 'forum defendant rule' simply by filing the notice of removal before being formally served with the summons." Pls.' Reply 2 n.2.

The limited briefing by the parties regarding this issue was not particularly helpful. The court nevertheless concludes that it need not address the parties' arguments regarding waiver or removal under section 1441(b) because it has already determined that subject matter jurisdiction based on diversity of citizenship or federal question jurisdiction is lacking.

## IV.  Conclusion

For the reasons explained, the court *sua sponte* determines that it lacks subject matter jurisdiction to hear this action and **remands** the action to the 401st Judicial District Court, Collin County, Texas, from which it was removed. The clerk of the court **shall** effect the remand in accordance with the usual procedure.

**It is so ordered** this 13th day of March, 2015.

*[signature: Sam A. Lindsay]*

Sam A. Lindsay
United States District Judge